IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 2:24-CR-127 |
| | ) |
| GEORGE JOHNSON, III, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### J. Nicholas Ranjan, United States District Judge

A federal grand jury indicted Defendant George Johnson, III on a lone charge of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). ECF 16. Before the Court is his motion to dismiss the indictment. ECF 48. Mr. Johnson argues that Section 922(g)(1) is unconstitutional as applied to him and on its face. *Id.*, pp. 2-3. He also argues that Section 922(g)(1) is unconstitutionally vague and violates the Commerce Clause. *Id.*, p. 3. After careful review, the Court denies his motion.

### BACKGROUND

According to the indictment that the grand jury returned on June 4, 2024, Mr. Johnson allegedly possessed a firearm on or about May 10, 2024, knowing that he had previously been convicted of the following felonies in state court: (1) Fleeing or attempting to elude police officer, a violation of 75 Pa. C.S. § 3733, on or about November 11, 2007; (2) Person not to possess a firearm, a violation of 18 Pa. C.S. § 6105, on or about February 11, 2009; (3) Receiving stolen property, a violation of 18 Pa. C.S. § 3925, on or about February 11, 2009; (4) Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, a violation of 35 P.S. § 780-113(a)(30), on or about July 21, 2010; (5) Aggravated assault, a violation of 18 Pa. C.S. § 2702, on or about March 31, 2015; and (6) Flight to avoid

apprehension, a violation of 18 Pa. C.S. § 5126, on or about September 27, 2016. ECF 16.

## DISCUSSION & ANALYSIS[1]

Mr. Johnson first argues that, under the framework in *New York State Rifle & Pistol Association, Inc. v. Bruen*, Section 922(g)(1) violates the Second Amendment as applied to him. ECF 49, p. 4. To begin with, the Court finds that, under the first step of *Bruen*'s two-step framework for analyzing Second Amendment challenges to firearm regulations, Mr. Johnson is among "the people" who have Second Amendment rights, and engaged in conduct protected by the Second Amendment—specifically, *e.g.*, possession of a firearm. *See United States v. Quailes*, No. 23-2533, 2025 WL 225486, at *4 (3d Cir. Jan. 17, 2025) (defendants on probation, "as adult citizens, are among 'the people' presumptively protected by the Second Amendment," and Section 922(g)(1) punishes "punishes quintessential Second Amendment conduct—possession of a firearm" (cleaned up)); *Range v. Att'y Gen. United States*, 124 F.4th 218, 228 (3d Cir. 2024) (*en banc*) (a felon is among 'the people' protected by the Second Amendment, and his proposed conduct—to possess a rifle—is protected by the Second Amendment).

Under *Bruen*'s second step, to justify a statute regulating protected conduct, the government bears the burden of showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. 1, 17 (2022). Courts must determine whether the challenged law is "relevantly similar to laws that our tradition is understood to permit." *United States v. Rahimi*, 602 U.S. 680, 692 (2024)

---

[1] In considering Mr. Johnson's motion to dismiss the indictment, the Court "accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

(cleaned up).  "Why and how the regulation burdens the right are central to this inquiry." *Id.*

The Court finds that the government has met its burden of showing that Section 922(g)(1) as applied to Mr. Johnson is consistent with the Nation's historical tradition of firearm regulation.  The government cites to surety laws and going-armed laws, which the Court agrees are sufficiently analogous laws that support a restriction on the possession of firearms by persons with previous convictions involving dangerous conduct, including aggravated assault.

At common law, the surety laws "authorized magistrates to require individuals suspected of future misbehavior to post a bond." *Rahimi*, 602 U.S. at 695 (explaining that "[i]f an individual failed to post a bond, he would be jailed[,]" but "[i]f the individual did post a bond and then broke the peace, the bond would be forfeit."). Sureties "were used to prevent two distinct types of future harm by keeping the peace and ensuring good behavior[,]" and any "justice of the peace could bind all those to keep the peace, who in his presence make any affray, or threaten to kill or beat another, or contend together with hot and angry words, or go about with unusual weapons or attendance, to the terror of the people." *Range II*, 124 F.4th 218 at 239 (Matey, J., concurring) (quoting 4 William Blackstone, *Commentaries on the Laws of England* 254 (1769)) (cleaned up).  Surety could also be granted upon request by someone who had "just cause to fear" that another would "do him a corporal injury, by killing, imprisoning, or beating him." *Id.* (quoting 4 Blackstone 255) (cleaned up).

Similarly, the going-armed laws prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Rahimi*, 602 U.S. at 697 (quoting 4 Blackstone 149) (cleaned up).  The punishment for these laws was forfeiture of the arms and imprisonment. *Id.*

Taken together, the surety and going-armed laws suggest a tradition of disarming an individual who "poses a clear threat of physical violence to another." *Id.*

at 698. Therefore, Mr. Johnson's predicate convictions for crimes that pose a threat of violence to others, particularly his conviction for aggravated assault in 2015, "place him within the category of those who have been disarmed consistent with the Nation's historical tradition." *United States v. McCants*, No. 22-310, 2023 WL 8436055, at *4 (E.D. Pa. Dec. 5, 2023) (finding Section 922(g)(1) constitutional as applied to a defendant previously convicted of aggravated assault); *see also United States v. Leslie*, No. 22-391, 2024 WL 1718062, at *2 (E.D. Pa. Apr. 22, 2024) (finding Section 922(g)(1) constitutional as applied to a defendant previously convicted of aggravated assault and robbery); *United States v. Daniels*, No. 15-127, 2024 WL 4906482, at *5 (E.D. Pa. Nov. 27, 2024) (defendant's conviction for aggravated assault "alone places him in the class of people who have been disarmed consistent with the nation's historical tradition of firearm regulation because those who commit assault have, since the founding, been considered dangerous" (cleaned up)); *United States v. Tevin Murphy-Robison*, No. 24-62, 2025 WL 52229, at *3 (E.D. Pa. Jan. 8, 2025) (finding Section 922(g)(1) constitutional as applied to defendant convicted of aggravated assault, carrying firearms without a license, and possession of an instrument of crime).

The Court pauses, though, to assess the recent spate of post-*Rahimi* decisions to ensure that its analysis aligns with those cases. In *Range II*, the *en banc* Third Circuit held that Section 922(g)(1) was unconstitutional as applied to an individual convicted of food-stamp fraud more than two decades ago. 124 F.4th 218 at 232. *Range II* is, of course, binding, but the Court finds it to be somewhat inapposite here, because the Third Circuit emphasized that its decision there was a "narrow one." *Id*. Moreover, the Third Circuit did not adopt any broader analytical framework for district courts to follow, given the peculiar facts of the case and the procedural posture. *See id.* at 232 n.13 ("[I]n this as-applied constitutional challenge, our task

is to decide only Mr. Range's case, rather than preview how this Court would decide future Second Amendment challenges.").

Other circuit courts have diverged on how best to analyze the constitutionality of Section 922(g)(1), and because their competing approaches have potential pitfalls, the Court is hesitant to adopt them.[2] *See United States v. Williams*, 113 F.4th 637, 658-60 (6th Cir. 2024) (instructing courts to find, based on a defendant's entire criminal record, whether the defendant is dangerous, and dividing past convictions into three categories: (1) crimes against the person (including murder, rape, assault, and robbery), which are violent and create a strong presumption of dangerousness; (2) crimes that inherently poses a significant threat of violence against a person (such as drug trafficking and burglary); and (3) crimes that cause no physical harm to another person (such as mail fraud and making false statements)); *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) (concluding that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"); *United States v. Hunt*, 123 F.4th 697, 705-06 (4th Cir. 2024) (like the Eighth Circuit, concluding that Section 922(g)(1) is constitutional as applied to all convicted felons, and there is no need for felony-by-felony litigation); *United States v. Diaz*, 116 F.4th 458, 469 (5th Cir. 2024) (finding Section 922(g)(1) constitutional as applied to defendant with theft conviction because theft was considered a felony at the time of the Founding, punishable by death or estate forfeiture, so "the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible").

After *Rahimi*, and based on the post-*Rahimi* circuit court decisions, it appears that the best argument Mr. Johnson could make for invalidating Section 922(g)(1) is the government's failure to point to any historical analogue imposing *permanent*

---

[2] *See, e.g., Range II*, 124 F.4th 218 at 280-81 (Krause, J., concurring) (endorsing the Sixth Circuit's framework, but noting that its retrospective approach raises due-process concerns).

lifetime disarmament, as opposed to *temporary* bans on firearms, such as the surety and going-armed laws.³ *See Rahimi*, 602 U.S. at 699 (noting that, "like surety bonds of limited duration, Section 922(g)(8)'s restriction was temporary as applied to [the defendant]"). But, under the current state of the law, it is unclear whether the government needs to cite to a historical permanent ban to meet its burden. *See Rahimi*, 602 U.S. at 713 (Gorsuch, J., concurring) ("We do not resolve whether the government may disarm an individual permanently."); *United States v. Morton*, 123 F.4th 492, 496 n.1 (6th Cir. 2024) ("[I]t is unclear whether *Rahimi*'s reasoning depended on the temporary nature of the firearm deprivation under Section 922(g)(8), which would make its analysis less helpful when considering the constitutionality of permanent disarmament under Section 922(g)(1)."). In *Range II*, the Third Circuit did not expressly require the government to proffer a permanent historical ban.⁴ Its

---

³ The government does cite to 20th-century laws that permanently disarmed convicted felons. ECF 58, p. 19 (citing Act of Mar. 7, 1923, ch. 266, § 5, 1923 N.D. Laws 380; Act of May 4, 1923, ch. 118, § 3, 1923 N.H. Laws 138; Act of June 13, 1923, ch. 339, § 2, 1923 Cal. Stat. 696). But these laws are too recent to be considered proper historical analogues. *See Range II*, 124 F.4th at 229 n.9 (disregarding the 1920s and 1930s laws banning firearm possession by felons, because they are "too late").

⁴ The majority opinion in *Range II*, at most, reasoned that "the Founding-era practice of punishing some nonviolent crimes with death does not suggest that the *particular* (and distinct) punishment at issue here—de facto lifetime disarmament for all felonies and felony-equivalent misdemeanors—is rooted in our Nation's history and tradition[,]" and read *Rahimi* to "authorize[] temporary disarmament as a sufficient analogue to historic temporary imprisonment *only* to respond to the use of guns to threaten the physical safety of others." 124 F.4th at 231. This appears to suggest that a temporary historical ban supports application of Section 922(g)(1) to someone, like Mr. Johnson, whose predicate offenses include those that risked the physical safety of others. But, again, given how narrow *Range II* was, this is not entirely unclear.

sister circuits too have not required the government to cite to laws imposing lifetime bans on firearms possession.[5] So this Court will not.

Mr. Johnson next argues that Section 922(g)(1) is unconstitutional on its face. ECF 48, p. 13. But this argument necessarily fails because "[a] party asserting a facial challenge must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (cleaned up). Since his as-applied challenge fails, Mr. Johnson "has not shown that

---

[5] For example, the Sixth Circuit did not mention any distinction between permanent lifetime disarmament and temporary disarmament in its discussion of historical analogues in *Williams*. But in *Morton*, the Sixth Circuit suggested that going-armed laws, which provided for forfeiture of arms, "could be analogized to modern laws requiring permanent firearm deprivation." 123 F.4th at 496 n.1. The Fifth Circuit, in *Diaz*, rather than pointing to a lifetime firearm ban, mostly relied on reasoning that the greater punishment includes the lesser to establish a tradition of permanent disarmament, *e.g.*, if capital punishment were permissible, then the lesser restriction of permanent disarmament would also be permissible. As to the going-armed laws, the Fifth Circuit (like the Sixth Circuit) thought it was sufficient that these laws, like Section 922(g)(1), provided for "permanent arms forfeiture as a penalty." *Diaz*, 116 F.4th 458, at 471. The Fourth and Eighth Circuits examined categorical bans on firearm possession, laws that ordered forfeiture of firearms by people who committed non-violent offenses, and laws that authorized death or estate forfeiture as punishment, but at no point discussed any distinction between permanent lifetime disarmament and temporary disarmament, beyond adopting a greater-includes-the-lesser theory. *See Jackson*, 110 F.4th at 1126-27; *Hunt*, 123 F.4th at 706. And, as to the greater-includes-the-lesser theory more generally, *Rahimi* seemed to bless this, but the *en banc* Court in *Range II* appeared to be fractured on its understanding of that aspect of *Rahimi*. *See Rahimi*, 602 U.S. at 699 ("[I]f imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible."); *compare Range II*, 124 F.4th 218 at 231 ("Though our dissenting colleagues read *Rahimi* as blessing disarmament as a lesser punishment generally, the Court did not do that."), *with Range II*, 124 F.4th 218 at 267 (Krause, J., concurring) ("*Rahimi* teaches that if a greater deprivation of rights was permissible as a penalty for an offense in the relevant past, the lesser restriction of disarmament is also permissible in a modern-day regulation." (cleaned up)), *and Range II*, 124 F.4th 218 at 293 (Shwartz, J., dissenting) ("[I]f fraud was punishable by capital punishment at the founding (i.e., de facto permanent disarmament), then under *Rahimi* it is appropriate to draw a historical analogue to the lesser consequence of permanent disarmament absent the death penalty.").

there is no set of circumstances under which the statute may be applied constitutionally." *Id.* at 415 (cleaned up).

As to his argument that Section 922(g)(1) is void for vagueness, "Section 922(g)(1) is not vague as it clearly bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than one year in prison (or of certain misdemeanors as specifically defined)." *United States v. Ames*, No. 23-178, 2023 WL 5538073, at *3 (E.D. Pa. Aug. 28, 2023); *United States v. Williams*, 553 U.S. 285, 304 (2008) (a criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement") (citations omitted).

Finally, Mr. Johnson asserts "for preservation purposes" that Section 922(g)(1) is "inconsistent with the original public meaning of the Constitution's Commerce Clause." ECF 48, p. 17 (cleaned up). As Mr. Johnson acknowledges, his "Commerce Clause challenge to the constitutionality of Section 922(g) fails on the merits, based on existing precedent." *United States v. Addison*, No. 23-118, 2024 WL 4278289, at *5 (W.D. Pa. Sept. 24, 2024) (Ranjan, J.).

\* \* \*

For these reasons, Mr. Johnson's motion to dismiss the indictment is **DENIED**.

DATE: January 23, 2025

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

cc:
George Johnson, III
DOC# 135997
Allegheny County Jail
950 Second Avenue
Pittsburgh, PA 15219